<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALPHONZO BROWN, JR., | : | Civil Action No. 07-3349 (KSH) |
| A/K/A TYRONE FITZGERALD, | : | |
| | : | |
| Petitioner, | : | |
| | : | <u>OPINION</u> |
| v. | : | |
| | : | |
| BRUCE A. HAUCK, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**APPEARANCES:**

> ALPHONZO BROWN, JR., #749293B
> Northern State Prison
> P.O. Box 2300
>
> Newark, New Jersey  07114   Petitioner <u>Pro</u> <u>Se</u>
>
> SARA B. LIEBMAN, ASSISTANT PROSECUTOR
> THEODORE J. ROMANKOW, UNION COUNTY PROSECUTOR
> 32 Rahway Avenue
> Elizabeth, New Jersey  07202

<u>**HAYDEN**</u>, District Judge

Alphonzo Brown, Jr., sentenced as Tyrone Fitzgerald, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) challenging a conviction in the Superior Court of New Jersey.  Respondents filed an answer, together with a copy of the state court record, arguing that the petition should be dismissed on the merits.  Although petitioner was granted time to file a reply, he did not file a reply to the answer.  For the reasons expressed below, this court will dismiss the petition on the merits with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

Petitioner challenges a judgment of conviction filed in the Law Division of the Superior Court of New Jersey, Union County, on December 17, 1999, after a jury found him guilty of third-degree possession of a weapon for an unlawful purpose, second and third-degree aggravated assault, and first-degree robbery.  See State v. Fitzgerald, Docket No. A-3227-99T4 slip op., pp. 1-2 (N.J. Super., App. Div., Feb. 19, 2002).  The Appellate Division described the factual basis for the convictions as follows:

> On July 19, 1998, Lin James left work and walked to a nearby store.  He was approached by an individual whom he had seen in the area; he did not know the individual's name, but he knew others called him "Headbanger."  "Headbanger" approached James, said "I have something for you," and pulled a knife.  He grabbed James' collar, slashed his arm, stabbed him in the buttocks, and punched him twice in the face.  Onlookers told James to "give him the money" at which time James threw $18 on the ground.  "Headbanger" picked up the money and ran off.  James suffered a broken jaw.  He was hospitalized for three days.  His jaw was wired shut and he was given stitches for the stab wounds.

> On July 29, 1998, James went to police headquarters and gave a statement to Detective Thomas Koczur of the Elizabeth Police Department.  While there, he was given six books, each containing approximately 200 photographs, and asked if he could identify his assailant.  He was left alone with the books while the detective returned to his office.  James randomly selected one of the books and after looking through a number of pages he observed a photograph which he identified as defendant.  In court he was "certain enough" that defendant was the man who robbed him because defendant had "a scar up on his head and . . . a scar on his lip."

> Defendant did not testify.  His sister, Cindy Brown, and his aunt, Patricia Tyler, testified that defendant dislocated his shoulder from a beating sometime in late June, and as a result his arm was in a sling at the time of the robbery.  Brown also testified that defendant neither sought medical attention nor filed a police report to

2

> document the incident.  The witnesses further stated that on the
> date of the attack on James, defendant was at a surprise birthday
> party with Brown, Tyler and other family members.

State v. Fitzgerald, Docket No. A-3227-99T4-01T4 slip op., pp. 3-4.

The Law Division sentenced petitioner to a presumptive 15-year term of imprisonment, with a mandatory 85% period of parole ineligibility, pursuant to the No Early Release Act, see N.J. Stat. Ann. § 2C:43-7.2a.  Id., p. 2.  Petitioner appealed, and on February 19, 2002, the Appellate Division of the Superior Court of New Jersey affirmed the conviction and sentence. Id. p. 7.  On June 19, 2002, the New Jersey Supreme Court denied certification.  See State v. Fitzgerald, 174 N.J. 43 (2002) (table).

Petitioner executed, and presumably submitted to the Law Division for filing, a petition for post-conviction relief on September 7, 2002.  The Law Division denied relief by order filed March 21, 2005.  Petitioner appealed, and on September 26, 2006, the Appellate Division affirmed the order denying post-conviction relief.  See State v. Fitzgerald, Docket No. A-5668-04T4, 2006 WL 2726901  (N.J. Super., App. Div., Sept. 26, 2006).  On April 4, 2007, the New Jersey Supreme Court denied certification.  See State v. Fitzgerald, 190 N.J. 392 (2007) (table).

Petitioner executed the § 2254 Petition presently before this court on July 13, 2007.  The clerk received it on July 17, 2007.  This court notified petitioner of the consequences of filing a § 2254 petition and gave him an opportunity to withdraw the petition, pursuant to Mason v. Myers, 208 F. 3d 414 (3d Cir. 2000).  In response, petitioner indicated that he would like this court to rule on the petition "as is."  The petition presents the following grounds:

> Ground One: AN EVIDENTIARY HEARING WAS REQUIRED
> FOR THE DEFENDANT TO ESTABLISH THAT HE HAD
> RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL . . . .

TRIAL COUNSEL'S PERFORMANCE WAS DEFICIENT
WHEN HE FAILED TO CALL ALL AVAILABLE
WITNESS[ES] TO TESTIFY ON BEHALF OF DEFENDANT.
TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO
OBJECT THE NICKNAME "HEADBANGER" OR A TATTOO
WITH THE NICKNAME "HEADBANGER" WAS
ASSOCIATED WITH THE DEFENDANT.

Ground Two: THE PROSECUTOR'S SUMMATION
EXCEEDED THE BOUNDS OF PROPRIETY.

Ground Three: THE TRIAL COURT ERRED IN DENYING
DEFENSE COUNSEL'S MOTION FOR A MISTRIAL AS A
RESULT OF TESTIMONY ELICITED FROM A POLICE
OFFICER CONNECTING THE DEFENDANT WITH PRIOR
CRIMINAL CONDUCT.

Ground Four: THE NO EARLY RELEASE ACT EMBODIED IN
N.J.S.A. 2C:43-7.2 IS UNCONSTITUTIONAL.

Ground Five: THE TRIAL COURT ERRED BY FAILING TO
AFFORD THE DEFENDANT AN APPROPRIATE HEARING
TO DETERMINE THE APPLICABILITY OF THE NO EARLY
RELEASE ACT TO THE PRESENT CASE.

Ground Six: THE PROSECUTOR'S COMMENTS IN
SUMMATION DEPRIVED THE DEFENDANT OF HIS RIGHT
TO A FAIR TRIAL.

Ground Seven: THE TRIAL COURT ERRED IN ADMITTING
THE OUT-OF-COURT IDENTIFICATION PROCEDURES
WHICH TAINTED THE IN-COURT IDENTIFICATION
PROCEDURES AND WHICH WAS THE PRODUCT OF
IMPERMISSIBLE SUGGESTIVENESS.

(Pet. ¶12.A. - 12.G.)

On November 9, 2007, respondents filed an answer and the state court record, seeking

dismissal of the petition on the merits.  Although given an opportunity to do so, petitioner did not

file a reply to the answer.

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."  Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[1]  Nor may the court recharacterize a ground asserted under state law into a federal constitutional claim.[2]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established

---

[1] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[2] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

6

federal law, or was based on unreasonable determination of the facts in light of the evidence

before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State Court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal Law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated

on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the

merits' has a well settled meaning: a decision finally resolving the parties' claims, with res

judicata effect, that is based on the substance of the claim advanced, rather than on a procedural,

or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal

quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374

(2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA

appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its

decision to deny habeas relief on that basis constituted an adjudication on the merits").  A state

court may render an adjudication on the merits of a federal claim by rejecting the claim without

any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  On the other hand, "[i]f the

petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. §

2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

As the New Jersey courts adjudicated petitioner's claims on the merits, this court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied. See 28 U.S.C. § 2254(d). Accordingly, this court may not grant habeas relief to petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and petitioner is in custody in violation of the Constitution or laws or treaties of the United States, see 28 U.S.C. § 2254(a), (d)(2). A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412; see also Carey v. Musladin, 127 S. Ct. 649, 653 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings"). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06

8

(2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Williams, 529 U.S. at 413.  For example, in Carey v. Musladin, the court reversed the granting of

a writ, holding that where "[n]o holding of this Court required the California Court of Appeal to

apply the test of Williams and Flynn to the spectators' conduct . . . , the state court's decision was

not contrary to or an unreasonable application of clearly established federal law."  Carey, 127 S.

Ct. at 654.[3]  In addition, whether a state court's application of federal law is "unreasonable" must

be judged objectively; an application may be incorrect, but still not unreasonable.[4]  Id. at 409-10;

see also Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005).  Thus, "[t]he federal *habeas* court

should not grant the petition unless the state court decision, evaluated objectively and on the

merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court

precedent."  Outten v. Kearney, 464 F. 3d 401, 414 (3d Cir. 2006) (citation and internal quotation

marks omitted).

---

[3] See also Wright v. Van Patten, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

[4] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

### III.  DISCUSSION

<u>A.  Ineffective Assistance of Counsel</u>

In ground one, petitioner claims that trial counsel was constitutionally ineffective in (1) failing to call as a defense witness every person who could testify that petitioner was at his father's birthday party at the time of the incident; (2) failing to timely object to the victim's testimony that "[t]hey called [petitioner] "Headbanger;" (3) failing to show that a tattoo of the name "Headbanger" was not associated with petitioner; (4) failing to challenge the admission of testimony regarding the victim's identification of petitioner's mug shot; and (5) failing to timely challenge a police officer's testimony that he could refresh his recollection of whether petitioner used additional aliases by conducting a criminal records check of petitioner.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  <u>Id</u>. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  <u>Id</u>. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that

they were outside the wide range of professionally competent assistance.  Id.  In assessing

counsel's duty to investigate, the Court explained

> [S]trategic choices made after thorough investigation of law and
> facts relevant to plausible options are virtually unchallengeable;
> and strategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable professional
> judgments support the limitations on investigation. In other words,
> counsel has a duty to make reasonable investigations or to make a
> reasonable decision that makes particular investigations
> unnecessary. In any ineffectiveness case, a particular decision not
> to investigate must be directly assessed for reasonableness in all
> the circumstances, applying a heavy measure of deference to
> counsel's judgments.

Strickland, 466 U.S. at 690-91.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting

guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness
> claim must consider the totality of the evidence before the judge or
> jury. Some of the factual findings will have been unaffected by the
> errors, and factual findings that were affected will have been
> affected in different ways. Some errors will have had a pervasive
> effect on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected by
> errors than one with overwhelming record support. Taking the
> unaffected findings as a given, and taking due account of the effect
> of the errors on the remaining findings, a court making the
> prejudice inquiry must ask if the defendant has met the burden of
> showing that the decision reached would reasonably likely have
> been different absent the errors.

Strickland, 466 U.S. at 695-696.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

In this case, petitioner presented his ineffective assistance of counsel claims to the Appellate Division, which rejected the claims without analysis and for the reasons expressed by the Law Division:

> We have carefully reviewed the record in light of these contentions and the applicable law. We are satisfied that the arguments advanced are without merit and do not warrant discussion in a full written opinion. R. 2:11-3(e)(2). Defendant has not demonstrated that counsel's performance was deficient so that, but for counsel's alleged errors, the result of the proceedings would have been different. See, inter alia, Strickland v. Washington, 466 U.S. 668, 694 . . . (1984); State v. Fritz, 105 N.J. 42, 52-53 (1987). We affirm substantially for the reasons expressed by Judge Dupuis in her well-reasoned oral decision on March 21, 2005.

State v. Fitzgerald, 2006 WL 2726901 *2 (N.J. Super., App. Div., Sept. 26, 2006).

In a 15-page oral ruling, Judge Dupuis rejected each of Petitioner's ineffective assistance of counsel claims, primarily on the grounds that the alleged deficiencies in performance constituted trial strategy, and that petitioner had not shown prejudice, given that the victim knew petitioner and the crime occurred in broad daylight. Specifically, the Law Division found:

> Petitioner claims the attorney did not properly investigate and present his alibi defense. Mr. Shiarella, at sidebar, said that what had happened was the date of the alibi had changed very recently in the course of the trial. He evidently talked to witnesses and discovered that this party was on a different day than he thought, that had been represented to him prior. Now several family members did certify that they were not contacted or called to

12

testify, and that if called they would have testified that on July 19th, the day of the crime, each was at a birthday party at Cindy Brown's home from 3 p.m. until midnight, with the defendant. Petitioner complains that each one of those witnesses should have been called . . . .

   We do have two issues here: we have the issue of Mr. Shiarella representing that the - he was only told during trial that the date of this party had moved, and two - we have some strategy issues.  The state argues that it's - you shouldn't call numerous relatives to testify to the same facts, recognizing the increased possibility of contradictions, especially with this alleged shoulder injury he had during the time.  I think we can all agree that that is sometimes strategy . . . this wasn't an issue that he missed.  He didn't just blow by this issue.  For example, he knew enough not to call the mother.  She had sobriety issues and she had a criminal record.  He obviously determined what witnesses to - which witnesses to decide to call, and actually he may not have called or talked to - his explan[ation] is that he was told the party was on a different day up until during the trial, so I don't find that a basis for relief . . . .

   Now the next matter he alleges is that the UDIR form does not list that he has a tattoo.  There is no proof that the UDIR form is based upon a physical inspection of the defendant.  Nobody gave me that proof; and, in fact, I imagine it's to the contrary.  I imagine if two people sit down and talk, they don't determine whether or not there are tattoos and the like on the body.  In addition to which, this, of all of his claims, to me, is - is absolutely 100 percent meritless.  He had a solid black tattoo on his arm.  It is as clear as day that something was there and he covered the whole thing up by blackening it all out.  Mr. Shiarella, quite frankly, would have been laughed out of court if he had presented that kind of evidence because no jury in the world is going to buy that.  That is a - you would have to have the most naive jurors to think that, oh, this man just chose to have a rectangular black box on his arm.  I mean, it just doesn't make any sense.  It's clear that some tattoo was under there.  Once again, though, I think that's trial strategy.

   Now he also objects to the use of the word Headbanger.  The victim claimed to know the defendant by this name.  Maybe only a nickname . . . .  This is permissible, pursuant to Rule 803C-19 as just one part of the identification.  He knew this gentleman.  This was - he clearly testified, I know this guy.  Don't know his name,

> but I know this guy . . . .  We all just know people by sight.  That is
> what the victim said in this particular case . . . .
>
>    Now if you sum up all of these points, I do not find they've met
> the first or second prong, singly or in combination.  Most
> importantly, the second prong is not showing me the result would
> be different if any of these facts were known.  He has not made out
> a prima facie case.  I do not feel a hearing is appropriate.  I'm
> going to deny the petition . . . .

State v. Brown, Ind. No. 98-10-1410 transcript, pp. 6-13 (N.J. Super., Law Div., March 31,

2005).

This Court finds that the rejection of petitioner's ineffective assistance of counsel claims

by the New Jersey courts was not contrary to, or an unreasonable application of, Strickland.

Essentially, the New Jersey courts found that - even if defense counsel had called every alibi

witness, presented evidence that petitioner did not have a "Headbanger" tattoo, objected to

testimony that petitioner was called "Headbanger," objected to the admission of testimony

regarding the identification of petitioner's mug shot, and objected to the police officer's

testimony that he could refresh his recollection of petitioner's aliases by conducting a criminal

records check - petitioner failed to show prejudice.  Given the strength of the victim's testimony

that he knew petitioner prior to the robbery and assault, the New Jersey courts' determination that

petitioner failed to establish that "counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result," was not an

unreasonable application of Strickland, 466 U.S. at 686; see also Campbell v. Burris, 515 F. 3d

172, 185 ("given the limited information presented to the jury regarding the defendant's record

and the overwhelming evidence of his guilt, we cannot say the conclusion reached by the

Delaware Supreme Court was an unreasonable application of Strickland"); Wells v. Petsock, 941

14

F. 2d 253, 259 (3d Cir. 1991) ("Absent some allegation of prejudice to the defense - for example, the destruction of exculpatory physical evidence or the loss of a key defense witness during the period of delay - such a claim is facially untenable").  Based on the foregoing, petitioner is not entitled to habeas relief on ground one.

B.  Prosecutorial Misconduct

In grounds two and six, petitioner asserts that the prosecutor's comments during summation, that the testimony of two defense witnesses was uncorroborated, violated his due process rights because the prosecutor's statements impermissibly infringed on petitioner's right to remain silent.  Specifically, petitioner contends that the following comments by the prosecutor during his summation violated due process:

> I'd like to talk to you briefly about Cindy Brown and Patricia Tyler.  Cindy Brown and Trish - Trish - Patricia Tyler.  Now, what did these two witnesses tell us.  They say, they were both present, Alphonso Brown was mugged and his shoulder was injured.  They were both there.  You talk about uncorroborated.  No 911 call.  The man's attacked by six people, injured so badly, his bone is sticking two or three inches out of his shoulder.  No 911 call.  No police report.  Nothing.  No photos of the shoulder.  Zero.  Nothing corroborated that story.
>
> Then - let's talk about Alphonso's injuries.  Injured so - so badly, bone sticking two to three - two to three inches out of his shoulder.  Can you imagine, two to three inches out of your shoulder, the bone sticking out?  No hospital.  No doctor.  No photo.  Nothing.  Nothing to say this man was injured, beside the word of Cindy Brown and Patricia Tyler.  (Emphasis supplied to objectionable remarks.) (3T 45-7 to 23).
>
> \*                                  \*                                  \*
>
> And of course, defendant and the party.  The party is for the father's birth, July 26th is his birthday.  Leaving aside the fact that we have no birth certificate that says his birthday is July 26.  All

<u>you have is the word from the people</u>, that we had a birthday and - but we threw the party July 19th.  July 19th being a Sunday, if you do the math, 7 days, July 26th being a Sunday.  <u>Why - was it ever explained to you why the birthday was a week earlier?  The party was a week injured Ju - June 24th or June 25.</u>  He had spent approximately, well, nearly a month or three weeks with this injury.  So, she was watching him like a hawk.  He didn't go anywhere, I know, because I was watching him.  That whole time?  He sits in the house for a month with a bone protruding from his shoulder, arm in a sling, <u>no doctor, no police report, for three weeks to a month?</u>  Of course, we remember that was the day, because of our father's birthday which was a week in advance, but we had the party a week earlier.  Does that ring true in your ears?  (Emphasis supplied to objectionable remarks).  (3T 47-17 to 48-11).

<u>State v. Brown</u>, Docket No. A-5668-04T4 appellant's brief, pp. 6-7 (N.J. Super., App. Div., undated) (Respondents' Appendix 17).

Petitioner presented his prosecutorial misconduct claim to the Appellate Division on direct appeal.  The court rejected the claim as follows:

The substance of the prosecutor's summation was that the testimony of Brown and Tyler was uncorroborated; that the alleged attack upon defendant resulted in no 911 call, no police report, no medical treatment and no photographs fo defendant's shoulder in a sling.  We do not find that the prosecutor's comments improperly shifted the burden of proof to defendant to present affirmative testimony in his defense, nor did the comments draw attention to defendant's failure to testify . . . .  The prosecutor's comments were appropriate in light of the alibi testimony of Brown and Tyler on direct and cross-examination.  The prosecutor did not suggest that only defendant could corroborate the witnesses' testimony.  The prosecutor's conduct did not result in substantial prejudice to defendant's fundamental constitutional rights.

<u>State v. Fitzgerald</u>, Docket No. A-3227-99T4 slip op., pp. 4-5 (N.J. Super., App. Div., Feb. 19, 2002) (citations omitted).

The Supreme Court has held that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them."  Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.  See Darden, 477 U.S. at182; Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).  As the Supreme Court explained in Darden,

> Under this standard of review, we agree with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial. The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent . . . .  Much of the objectionable content was invited by or was responsive to the opening summation of the defense. As we explained in United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the idea of "invited response" is used not to excuse improper comments, but to determine their effect on the trial as a whole. Id., at 13.

Darden, 477 U.S. at 181-182 (footnote omitted).

The Fifth Amendment prevents a person from being "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Petitioner's claim is remotely premised on Griffin v. State of California, 380 U.S. 609, 611 (1965).  In Griffin, the defendant was convicted of first degree murder after the prosecution had stated in summation that the defendant was the only person who could provide information as to certain details relating to the murder and yet

defendant had "'not seen fit to take the stand and deny or explain.'"  The Supreme Court reversed the conviction on the ground that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Id. at 615.[5]  However, in United States v. Robinson, 485 U.S. 25, 31 (1988), the Supreme Court declined to "take the view that any 'direct' reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment as construed in Griffin."  As the court explained,

> "[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . .  To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another.  The broad dicta in Griffin to the effect that the Fifth Amendment "forbids . . . comment by the prosecution on the accused's silence," 380 U.S., at 615, must be taken in light of the facts of that case.  It is one thing to hold, as we did in Griffin, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would forbid the prosecutor from fairly responding to an argument of the defendant by adverting to that silence.  There may be some "cost" to the defendant in having remained silent in each situation, but we decline to expand Griffin to preclude a fair response by the prosecutor in situations such as the present one.

Robinson, 485 U.S. at 33-34.

Interpreting Griffin, the Third Circuit has observed that "[a] remark is directed to a defendant's silence when the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused

_____

[5]  See also Baxter v. Palmigiano, 425 U.S. 308, 319 (1976) ("Griffin prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt").

to testify."  United States v. Brennan, 326 F. 3d 176, 187 (3d Cir. 2003) (citations and internal

quotation marks omitted).  Moreover, statements regarding the "absence of facts in the record[,]

need not be taken as comment on [a] defendant's failure to testify."  Bontempo v. Fenton, 692 F.

2d 954, 959 (3d Cir. 1982); see also Brennan, 326 F. 3d at 188 ("Nor were the prosecutor's

remarks about the defense's failure to call anyone who knew anything about the case a comment

on [defendant]'s failure to testify.  The context of this statement reveals that it was directed

toward the weight the jury should accord to the testimony of the three defense witnesses");

United States v. Isaac, 134 F. 3d 199, 206 (3d Cir. 1998) (prosecutor did not violate Fifth

Amendment by stating:  "[Defendant] captained that boat from Jamaica, and the only people who

would know that [defendant] captained that boat from Jamaica are [defendant], Conrad Brown,

Irvin Reid, and that fourth individual in Jamaica.  Those are the only people").[6]  This court

cannot say that the New Jersey courts' adjudication of this claim was contrary to, or an

unreasonable application of, Griffin, Robinson and other Supreme Court precedent.   Thus,

petitioner is not entitled to habeas relief on ground six.

C.  Testimony Connecting Petitioner With Prior Criminal Conduct

       In ground three, petitioner asserts that "the trial court erred in denying defense counsel's

motion for a mistrial as a result of testimony elicited from a police officer connecting the

defendant with prior criminal conduct" because, despite the trial court's curative instruction, the

prejudicial impact of the statement denied petitioner his right to a fair trial.  (Pet. ¶ 12.C.)

_____

       [6] Cf. United States v. Hasting, 461 U.S. 499, 515 (1983) ("But I do not believe the
protective shield of the Fifth Amendment should be converted into a sword that cuts back on the
area of legitimate comment by the prosecutor on the weaknesses in the defense case") (Stevens,
J., concurring).

Specifically, petitioner points to the following response by detective Thomas Koczur to the prosecutor's question as to whether anything would refresh Koczur's recollection as to petitioner's use of aliases: "If there was a check done on his NEPS criminal history, that would be something." <u>State v. Fitzgerald</u>, Indictment No. 98-10-1410 transcript, pp. 36-37 (N.J. Super., Law Div., Oct. 6, 1999). Petitioner argues that the curative instruction was inadequate because, if the petitioner did not have a criminal history, then the officer's recollection would not have been refreshed by running a criminal records check, since there would be nothing to review.

Petitioner presented ground three on direct appeal. The Appellate Division rejected the claim as follows:

> Nor do we find Detective Koczur's testimony so prejudicial as to constitute a miscarriage of justice. An issue at trial was the use by defendant of names other than Tyrone Fitzgerald. When asked by the prosecutor if anything would help refresh his recollection of other names used by defendant, Koczur responded, "If there was a check done on his NEPS criminal history, that would be something." After a sidebar conference, the court instructed the jury that:

>> You may have just heard testimony that the defendant's criminal history was run. I want you to understand from that, that that doesn't mean he has a criminal history. You can run my criminal history, or any of your criminal histories. They go in and inquire. It doesn't mean that they're gonna [sic] get a positive result. All right. I just want you to all understand that.

> The detective never testified that he or anyone else conducted a criminal history check on defendant. His testimony did not suggest that defendant had a record. To the extent that the testimony could be considered inappropriate, the trial judge immediately provided an appropriate curative instruction . . . . The admission of the evidence was not clearly capable of producing an unjust result warranting reversal.

20

State v. Fitzgerald, Docket No. A-3227-99T4 slip op., pp. 5-6 (N.J. Super., App. Div., Feb. 19, 2002).

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."  Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983).  The admissibility of evidence is generally a question of state law which is not cognizable under habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").

Moreover, this court is not aware of any Supreme Court case clearly establishing that the admission of other crimes or bad acts evidence constitutes a violation of federal constitutional rights, and the most relevant Supreme Court cases suggest the contrary.  See, e.g., Estelle v. McGuire, 502 U.S. 62 (1991) (allowing evidence of prior injuries in a trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction).  Because the admission of the testimony that a criminal records check would reveal petitioner's aliases was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under ground three.  See Minett v. Hendricks, 135

Fed. Appx. 547 (3d Cir. 2005) (rejecting claim that admission of "other crimes" evidence is contrary to or an unreasonable application of clearly established Supreme Court precedent).

D.  Admission of Identification Testimony

Petitioner asserts in ground seven that the trial court "erred in admitting the out-of-court identification procedures which tainted the in-court identification procedures and which was the product of impermissible suggestiveness."  (Pet. ¶ 12.G.)  Petitioner argues that the out-of-court identification, which consisted of a police officer's giving the victim six books of mug shots of black, was impermissibly suggestive because it gave rise to a substantial likelihood of misidentification.  Respondents argue that the in-court identification was reliable because the victim testified that he knew petitioner prior to the crime and recognized him at the time of the incident as the person known as "Headbanger."

The Supreme Court has observed that improper pretrial identification procedures by police may cause witnesses to misidentify a criminal.  See Simmons v. United States, 390 U.S. 377, 383 (1968).  In that case, "the witness thereafter is apt to retain in his memory the image of the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification."  Id. at 383-84.  As the Supreme Court noted, "[it] is, first of all, apparent that the primary evil to be avoided is a very substantial likelihood of irreparable misidentification."  Simmons, 390 U.S. at 384.  "It is the likelihood of misidentification which violates a defendant's right to due process . . . .  Suggestive confrontations are disapproved because they increase the likelihood of misidentification."  Neil v. Biggers, 409 U.S. 188, 198 (1972).  However, a suggestive identification procedure "does not violate due process so long as the identification possesses sufficient aspects of reliability,

22

Manson v. Brathwaite, 432 U.S. 98, 106 (1977), for reliability is the "linchpin in determining the admissibility of identification testimony," id. at 114; see also United States v. Wise, 515 F. 3d 207, 215 (3d Cir. 2007); United States v. Brownlee, 454 F. 3d 131, 139 (3d Cir. 2006).  The central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." Brathwaite, 432 U.S. at 106 (quoting Biggers, 409 U.S. at 199); see also United States v. Maloney, 513 F. 3d 350, 355 (3d Cir. 2008); Brownlee, 454 F. 3d at 139; Thomas v. Varner, 428 F.3d 491, 503 (3d Cir. 2005).

Factors to be considered in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199.  But where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, identifications will not violate due process.  See Coleman v. Alabama, 399 U.S. 1, 7 (1970).

In this case, Petitioner contends that the in-court identification of Petitioner by the victim was tainted by the impermissibly suggestive out-of-court identification of his mug shot at the police station.  The Appellate Division rejected the claim on direct appeal without discussion. The Law Division judge determined that the out-of-court identification of petitioner's mug shot was not impermissibly suggestive and the in-court identification was reliable and admissible. After conducting a pre-trial hearing, the judge ruled:

According to the Officer, the victim [stated] that he knew the defendant.  So, this is not a case where he had to pick out, you know, who of these 1,000 people looks the most like the defendant, which is what we're really worried about.  He actually knew one, which is supported by the fact that he came out so quickly, and having found the picture.  It was not - he clearly hadn't gone through a ton of books to find him.  He recognized him right away.  Based upon that, I do find there is a level of certainty with regard [to the] victim.  He came out quickly to say, that it was indeed the defendant.  He knew the defendant prior.  This happened a week or so - 10 days after the actual crime.

There's a little bit of a leap of faith being - the State requesting me to make, by saying that there were 1,000 black men, ergo, it was a fair lineup.  And - my feeling in the fact that there aren't a lot of 50 year old defendants, yeah, I can't - I mean, I think we can - we can almost go so far as to take judicial notice, of all not- most people arrested tend to be young.  The high crime years are 18 to 35ish years, not the 50 to 75 years.  So, I guess I can - I won't take judicial notice of the - of the low age, but I will say, if you had a 1,000 people, that it's probable they would be a range of ages in - in that.  And indeed he said, it was unlikely there would be 50 - there would be a number of 50 year olds on the same page.  So, do - and I don't find anything suggestive about it.  1,000 photos, here they are, take a look at them, and the[n] have the Officer leave the room, is certainly not suggestive at all.  So, fortuitous, because he - according to the testimony, the victim knew the defendant, I'm gonna find that there is no - I don't need any more witness, and there's [no] need for me to see the books or anything else in this case, and I'm going to allow the identification - the S-1 identification.

State v. Fitzgerald, Ind. No. 98-10-1410 transcript, pp. 51-53 (N.J. Super., Law Div., Oct. 5, 1999).

The New Jersey court's ruling that the identification was reliable was not contrary to, or an unreasonable application of the factors which the Supreme Court requires to be considered in evaluating the likelihood of misidentification.  See Biggers, 409 U.S. at 199.  The victim had a clear opportunity to view his assailant, whom he had known prior to the incident and recognized.

Under these circumstances, the adjudication of petitioner's identification claim was not contrary to, or an unreasonable application of, Biggers and other Supreme Court jurisprudence.

E. Apprendi Claim

In ground four, petitioner contends that New Jersey's No Early Release Act ("NERA"), N.J. STAT. ANN. § 2C:43-7.2, is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000), because it required the trial court to increase petitioner's sentence based on the finding that petitioner committed a "violent crime," which was neither found by a jury nor admitted by petitioner. In ground five, petitioner contends that the trial court erred by imposing the NERA sentence without a hearing.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court determined that Apprendi had a constitutional right to have a jury, rather than a judge, find bias, because the finding was necessary to support an enhanced sentence under the New Jersey hate crimes law. The Supreme Court reversed Apprendi's sentence pursuant to the principle that, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 476 (citation and internal quotation marks omitted). In 2002, the Supreme Court held in Ring v. Arizona, 536 U.S. 584 (2002), that imposition of the death penalty under Arizona law violated Apprendi because the trial judge determined the presence or absence of aggravating factors required by Arizona law for imposition of the death penalty. See Ring, 536 U.S. at 602. On June 24, 2004, the Court determined in Blakely v. Washington, 542 U.S. 296 (2004), that application of Washington's sentencing guidelines violated the defendant's

25

rights under <u>Apprendi</u>.  The <u>Blakely</u> Court clarified that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  <u>Blakely</u>, 542 U.S. at 303 (emphasis in original) (citations omitted).

At the time petitioner committed the crimes for which he was convicted, NERA provided for a mandatory 85% period of parole ineligibility and a three to five-year period of parole supervision, where a defendant is convicted of a first or second degree violent crime, as defined by the act; in addition, the statute required a hearing prior to the imposition of the sentence.  In relevant part, this statute provided:

> a.  A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.
>
> \*                              \*                              \*
>
> d.  For the purposes of this section, "violent crime" means any crime in which the actor . . . uses or threatens the immediate use of a deadly weapon . . . .  For the purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
>
> e.  A court shall not impose sentence pursuant to this section unless the ground therefor has been established at a hearing after the conviction of the defendant and on written notice to him of the ground proposed.  The defendant shall have the right to hear and controvert the evidence against him and to offer evidence upon the issue.

No Early Release Act, P.L.1997, c. 117, § 2 (eff. June 9, 1997); 1997 N.J. Sess. Law Serv. Ch. 117 (West).

In <u>State v. Johnson</u>, 166 N.J. 523, 543 (2001), to avoid constitutional doubt after <u>Apprendi</u>, the New Jersey Supreme Court "construed subsection (e) of NERA to require that the 'violent crime' condition must be submitted to a jury and found beyond a reasonable doubt." <u>Id.</u> at p. 543. However, the court determined that, notwithstanding its construction of NERA, Johnson's constitutional rights were not violated because the facts adduced at his trial established that, in convicting Johnson of robbery, the jury necessarily made the "violent crime" finding beyond a reasonable doubt:

> As noted, NERA defines "violent crime" as, for present purposes, any crime in which the actor "uses or threatens the immediate use of a deadly weapon." *N.J.S.A.* 2C:43-7.2(d). Thus, the elements of the NERA "violent crime" factor do not overlap completely with the elements of first-degree robbery, because a defendant could be convicted of first-degree robbery where the defendant threatens the victim and is armed with a deadly weapon but does not threaten the victim *with* the deadly weapon.
>
> The only witness to the August 8 robbery who testified at trial was the victim, and she testified on both direct and cross examination that Johnson aimed the BB gun at her. That testimony was uncontradicted by any other evidence at trial. Thus, in view of the evidence adduced at trial, the only conceivable conclusion that Johnson's jury could have reached in finding Johnson guilty of first-degree robbery was that Johnson threatened the victim with the BB gun in the process of robbing her. Accordingly, notwithstanding the fact that the trial court failed to specifically instruct the jury to find the NERA violent crime predicate, we affirm Johnson's sentence because the facts adduced at trial establish that the jury made that finding beyond a reasonable doubt.

<u>Johnson</u>, 166 N.J. at 545-546.

In this case, petitioner presented his NERA claim to the Appellate Division on direct appeal in his pro se supplemental brief.  The Appellate Division rejected the claim as follows:

> As to defendant's sentence, we find no reversible error.  NERA is constitutional as long as the "violent crime" predicate is found by a jury beyond a reasonable doubt.  State v. Johnson, 166 N.J. 523, 543 (2001).  By finding defendant guilty of armed robbery as well as possession of a weapon for an unlawful purpose, the jury made the constitutionally required determination that defendant committed a "violent crime."  The evidence was clearly sufficient to support these findings.  No further hearing was required.

State v. Fitzgerald, Docket No. A-3227-99T4 slip op. p. 6 (N.J. Super., App. Div., Feb. 19, 2002).

The rationale of the Appellate Division was that, given the victim's uncontradicted testimony that petitioner stabbed him with a knife in the course of a robbery, by finding petitioner guilty of armed robbery and possession of a weapon for an unlawful purpose, the jury necessarily found beyond a reasonable doubt that petitioner "use[ed] or threaten[ed] the immediate use of a deadly weapon," P.L.1997, c. 117, § 2, ¶ d.  Because petitioner's sentence was increased on the basis of facts reflected in the jury verdict, the New Jersey courts' adjudication of petitioner's NERA claim was not contrary to, or an unreasonable application of, Apprendi.  Petitioner is therefore not entitled to habeas relief on grounds four and five.

F.  Certificate of Appealability

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c)

because the applicant has not made a substantial showing of the denial of a constitutional right.

See Miller-El v. Cockrell, 537 U.S. 322 (2003).

### III.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition for a Writ of Habeas Corpus with prejudice and denies a certificate of appealability.


 /s/ Katharine S. Hayden
**KATHARINE S. HAYDEN, U.S.D.J.**


DATED:  April 28,  2008

29